**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| Evelin Preciado, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. |
| vs. | JURY TRIAL DEMANDED |
| RugsUSA, LLC, | |
| *Defendant.* | |

**CLASS ACTION COMPLAINT**

## I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing,* it is deceptive to make up an "artificial, inflated price… for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1.

4.    And, Colorado's Consumer Protection Act expressly prohibits businesses from making "false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions," Colo. Rev. Stat. § 6-1-105 (l); knowingly or recklessly representing that goods have "characteristics" that they do not have, Colo. Rev. Stat. § 6-1-105 (e); advertising "goods, services, or property with intent not to sell them as advertised," Colo. Rev. Stat. § 6-1-105 (i); and failing "to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction," Colo. Rev. Stat. § 6-1-105 (u).

5.    Defendant RugsUSA, LLC ("Defendant" or "RugsUSA") sells and markets rugs and home accessory products online through the RugsUSA brand and website, www.rugsusa.com ("RugsUSA Products" or "Products").  It sells its products using fake sales,

and has used fake sales for years. Consumers buy RugsUSA products believing that they are getting a discount, when in fact they are not.

6.     RugsUSA uses fake sales despite knowing that this is illegal and misleading. RugsUSA was already sued for using fake sales in other states. It settled those cases, but continued using fake sales. Today, RugsUSA continues to use illegal fake sales. It continues to mislead consumers into believing that they are getting a sale price—when in fact consumers are paying full price.

7.     As described in greater detail below, Ms. Preciado bought an item from Defendant from its website, www.rugsusa.com. When Ms. Preciado made her purchase, Defendant advertised that a sale was going on. Defendant represented that the Product Ms. Preciado purchased was being offered at a steep discount from its purported regular price that Defendant advertised. And based on Defendant's representations, Ms. Preciado believed that she was purchasing a Product whose regular price and market value was the purported regular price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Ms. Preciado to buy from Defendant when she did.

8.     In truth, however, the representations Ms. Preciado relied on were not true. The purported regular prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were ongoing—not time-limited. Had Defendant been truthful, Ms. Preciado and other consumers like her would not have purchased the Products, or would have paid less for them.

9.     Plaintiff brings this case for herself and the other customers who purchased

RugsUSA Products.

## II.    Parties.

10.    Plaintiff Evelin Preciado is domiciled in Denver, Colorado.

11.    The proposed class includes citizens of Colorado.

12.    Defendant RugsUSA, LLC is a Delaware company with its principal place of business at 8 Santa Fe Way, Cranbury, NJ 08512.

## III.    Jurisdiction and Venue.

13.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

14.    The Court has personal jurisdiction over Defendant because Defendant sold RugsUSA Products to consumers in Colorado, including to Plaintiff.

15.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this District, given that Defendant sold RugsUSA Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV.    Facts.

### A.    Defendant's fake sales, fake prices, and fake discounts.

16.    Defendant manufactures, distributes, markets, and sells rugs and home accessory products.  Defendant sells its Products directly to consumers through its website,

3

www.rugsusa.com.

17.      Defendant has used fake sales to sells its products for years.

18.      Between January 20, 2021, and April 2023, Defendant advertised that it had limited time sales, regular prices, and discounts from those prices.  Consumers purchased the products, believing that they were getting a deal during a sale that would end soon.  But in fact, the sales were constantly available.  Indeed, on 100 percent of 51 archived snapshots of Defendant's site on the Internet Archive's Wayback Machine (available at www.archive.org) between January 20, 2021, and April 10, 2023, Defendant was running a purportedly time-limited discount on all RugsUSA Products of up to at least 60% every time that the website was checked.[1]

19.      In April 2023, RugsUSA was sued in California for misleading customers with its fake sale practices.[2]  Lawsuits in other states followed.  Plaintiffs in the other cases were represented by Plaintiff's counsel in this case.  In February 2024, the parties settled, with RugsUSA ultimately paying over $14 million dollars.[3]  That settlement did not include consumers who made purchases in Colorado.

20.      Even after being sued and settling, RugsUSA continued to use fake sales, and continues its practice of using fake sales today.  This includes using fake strikethrough prices, fake sitewide sales, and "limited time" sales that are continuously available.

21.      For example, Defendant still consistently advertises a sitewide discount on its

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/
[2] *See, e.g., Dray v. RugsUSA*, No. 2:23-cv-3017 (C.D. Cal. April 21, 2023) (complaint).
[3] The class members for that settlement included purchaser from certain states (not including Colorado) that had purchased RugsUSA products on or before October 12, 2023.

Products.  These discounts offer "X%" off the regular prices Defendant advertises.  Even though in truth these discounts run in perpetuity, Defendant prominently claims they are "LIMITED TIME ONLY" or "END[ING] SOON."  And it advertises these discounts extensively: on a banner at the header of every webpage of its website; in a large banner image on its homepage; on the products listing pages, next to images of each Product; on the individual product pages for each Product.  Example screenshots are provided on the following pages:



*Captured on October 28, 2023*



*Captured on December 24, 2023*



*Captured on February 13, 2024*



*Captured on April 17, 2024*



*Captured on July 11, 2024*



*Captured on August 9, 2024*



*Captured on September 11, 2024*



*Captured on October 8, 2024*



*Captured on April 18, 2024*



*Captured on April 17, 2024*



*Captured on October 8, 2024*

22.    Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely.  For example, as depicted below, Defendant represents that its sales expire on a particular date or when the countdown clock expires, for example: "ENDS TONIGHT!" or "ENDS IN 1D 5H 37M 29S."  To reasonable consumers, this means that after a specified date, or after the countdown timer ends, Defendant's Products will no longer be on sale and will retail at their purported regular price.  But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

23.    For example, on July 8, 2024 Defendant advertised a purportedly time-limited sale "END[ING] TONIGHT!"



*Captured on July 8, 2024*

24.    However, on July 9, 2024, the day that the time-limited sale was supposed to have

ended, Defendant advertised another "limited time" sale.



*Captured on July 9, 2024*

25.    To confirm that Defendant routinely offers discounts off of purported regular

prices even after settling its fake discount cases, Plaintiff's counsel performed an investigation of

Defendant's advertising practices using the Internet Archive's Wayback Machine and screen

captures from Defendant's website.  As mentioned above, Plaintiff's counsel collected 51

randomly selected screenshots of Defendant's website from January 20, 2021, to April 10, 2023,

saved on the Wayback Machine.  Plaintiff's counsel also collected an additional 184 screenshots

from June 6, 2023 through December 20, 2024, both by using the Internet Archive's Wayback

Machine and by directly visiting the site.  In total, Plaintiff's counsel collected 235 screenshots

of Defendant's website, covering the period from the period beginning January 20, 2021, through

December 20, 2024.  204 out of 235 of those screenshots displayed a purportedly time-limited

sale.

26.     Using these tactics, Defendant leads reasonable consumers to believe that they

will get a discount on the Products they are purchasing if they purchase during the "limited time"

promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they

will get a Product worth X at a discounted, lower price Y.  This creates a sense of urgency: buy

now, and you will receive something worth more than you pay for it; wait, and you will pay

more for the same thing later.

27.     Based on Defendant's advertisements, reasonable consumers reasonably believe

that the regular prices Defendant advertises are Defendant's former prices (that is, the price at

which the goods were actually offered for sale before the limited-time offer went into effect).  In

other words, reasonable consumers reasonably believe that the regular prices Defendant

advertises represent the amount that consumers formerly had to pay for Defendant's goods,

before the limited-time sale began.  Said differently, reasonable consumers reasonably believe

that, prior to the supposedly time-limited sale, consumers had to pay the regular price to get the

item and did not have the opportunity to get a discount from that regular price.

28.     Reasonable consumers also reasonably believe that the regular prices Defendant

advertises represent the true market value of the Products, and are the prevailing prices for those

Products; and that they are receiving reductions from those regular prices in the amounts

advertised.  In truth, however, Defendant almost always offers discounts off the purportedly

regular prices it advertises.  As a result, everything about Defendant's price and purported

discount advertising is false.  The regular prices Defendant advertises are not actually

Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells,

and do not represent the true market value for the Products, because Defendant's Products are

constantly available for less than that, and customers did not have to formerly pay that amount to

get those items.  The purported discounts Defendant advertises are not the true discount the

customer is receiving, and are often not a discount at all.  Nor are the purported discounts

"limited time" or "END[ING] TONIGHT"—quite the opposite, they are almost always

available.

> **B.**    **Defendant's advertisements are unfair, deceptive, and unlawful.**

29.    Colorado's Consumer Protection Act prohibits businesses from making "false or

misleading statements of fact concerning the price of goods, services, or property or the reasons

for, existence of, or amounts of price reductions," Colo. Rev. Stat. § 6-1-105 (l); knowingly or

recklessly making false representations "as to the characteristics" of goods, Colo. Rev. Stat. § 6-

1-105 (e); advertising good  "with intent not to sell them as advertised," Colo. Rev. Stat. § 6-1-

105 (i); and failing "to disclose material information concerning goods … which information

was known at the time of an advertisement or sale if such failure to disclose such information

was intended to induce the consumer to enter into a transaction," Colo. Rev. Stat. § 6-1-105 (u).

30.    Here, as described in detail above, Defendant makes false and misleading

statements concerning the price of its goods and the reasons for, existence of, or amounts of price

reductions.  Defendant advertises regular prices that are not its true regular prices, or its former

prices, or the prevailing market price of its products.  Defendant also makes false and misleading statements about the existence of and amounts of price reductions, by advertising that there are time-limited price reductions when in fact the offering price for its products are simply the regular price consumers usually or always have to pay for the products.  In addition, Defendant knowingly and recklessly represents that its products have characteristics that they do not have, by representing that they have a fictious regular and former price and market value.  Defendant also advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  And, Defendant failed to disclose material information that was known at the time it made its advertisement, namely that its advertised reference prices and discounts were fictitious; and Defendant failed to disclose this to induce consumers to enter the transaction.

31.     Moreover, Defendant knows that this behavior is unlawful, unfair, and deceptive. As explained in greater detail above, RugsUSA recently settled cases where similar conduct was accused of violating similar laws.  Yet, Defendant simply settled, and continued violating the same laws after settlement.

**C.     Defendant's advertisements harm consumers.**

32.     Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products; and that these are former prices that Defendant sold its Products at before the time-limited discount was introduced.

33.     Reasonable consumers would also expect that, if they purchase during the sale,

they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

34.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

35.    Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[4]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[5]

36.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[6]

37.    Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant

---

[4] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[6] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

can charge a price premium for its Products, that it would not be able to charge absent the

misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the

class paid more for the Products they bought than they otherwise would have.

> **D.    Plaintiff was misled by Defendant's misrepresentations.**

38.    On December 9, 2024, Ms. Preciado purchased a RugsUSA Arrel Speckled

Wool-Blend Rug from Defendant's website, www.rugsUSA.com.  She made this purchase while

living in Denver, Colorado.  When Ms. Preciado made her purchase, Defendant's website

represented that the RugsUSA Arrel Speckled Wool-Blend Rug had a regular price of $629.95

plus tax, but was discounted by $188.99, for a discount price of $440.96.

39.    In the email order confirmation that Defendant sent to Ms. Preciado after she

made her purchase, Defendant again represented that the RugsUSA Arrel Speckled Wool-Blend

Rug had a regular price of $629.95, that Ms. Preciado was receiving a discount of $188.99, and

that the sale price was $440.96.  In short, Defendant represented that the Products had a certain

regular price and that Ms. Preciado was receiving a substantial discount for the rug that she

purchased.

Arrel Speckled Wool-Blend Rug | Wheat - 8' x 10'

Quantity: 1
Total: $629.95

Discount (code: CYBERWEEK): $-188.99
Subtotal: $440.96
CO STATE TAX: $12.79
SCIENTIFIC & CULTURAL FAC.(CD): $0.44
RTD GREATER DENVER: $4.41
Colorado Retail Delivery Fee: $0.29
Shipping: $0.00
Total: $458.89

40.    Ms. Preciado read and relied on Defendant's representations on the website, specifically that the Products were being offered at a discount for a limited time and had the higher regular and usual prices listed above.  Based on Defendant's representations described and shown above, Ms. Preciado reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular price, that this regular price was the market value of the Products that she was buying, that she was receiving the advertised discount as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). She would not have made the purchase if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discount.

41.    In reality, as explained above, Defendant's products, including the Product that Ms. Preciado purchased, are almost always available at a discounted price off of the purported regular prices.   In other words, Defendant did not regularly sell the Product Ms. Preciado purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sale was not limited time—Defendant's products are routinely on sale.

42.    Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (*e.g.*, if

the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

### E. Defendant breached its contract with and warranties to Ms. Preciado and the putative class.

43. When Ms. Preciado, and other members of the putative class, purchased and paid for the RugsUSA Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. The offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

44. Defendant's website lists the regular prices—and market values—of the items that Defendant promised to provide. And Defendant agreed to provide a discount equal to the difference between the regular prices, and the discounted prices paid by Ms. Preciado and putative class members. For example, Defendant offered to provide Ms. Preciado the Arrel Speckled Wool-Blend Rug with a market value of $629.95, and to provide a discount of $188.99. Defendant also warranted that the regular prices and market values of the Products Ms. Preciado and the putative class purchased were the advertised list prices and warranted that Ms. Preciado and the putative class were receiving a specific discount on the Products.

45. The regular price and market value of the items Ms. Preciado and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

46. Ms. Preciado and other members of the putative class performed their obligations

under the contract by paying for the items they purchased.

47.    Defendant breached its contract by failing to provide Ms. Preciado and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.  Defendants also breached warranties for the same reasons.

## V.    Class action allegations.

48.    Plaintiff brings the asserted claims on behalf of the proposed class of all persons who, while in the state of Colorado and within the applicable statute of limitations period, purchased one or more RugsUSA Product advertised at a discount on Defendant's website.

49.    The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

50.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

51.    Class members can be identified through Defendant's sales records and public notice.

*Predominance of Common Questions*

52.     There are questions of law and fact common to the proposed class.  Common

questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated Colorado's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty; and

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality & Adequacy*

53.     Plaintiff's claims are typical of the proposed class.  Like the proposed class,

Plaintiff purchased a RugsUSA Product advertised at a discount from Defendant.  There are no

conflicts of interest between Plaintiff and the class.

*Superiority*

54.     A class action is superior to all other available methods for the fair and efficient

adjudication of this litigation because individual litigation of each claim is impractical.  It would

be unduly burdensome to have individual litigation of millions of individual claims in separate

lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**First Cause of Action:**

**Violation of Colorado's Consumer Protection Act: Colo. Rev. Stat. § 6-1-105**

**(By Plaintiff and the Class)**

55.     Plaintiff incorporates each and every factual allegation set forth above.

56.    Plaintiff brings this cause of action on behalf of herself and members of the Class.

57.    Defendant has violated the Colorado Consumer Protection Act, Colo. Rev. Stat. §
6-1-105, by disseminating false and misleading advertisements to Plaintiff and Class members.

58.    The Colorado Consumer Protection Act prohibits unfair or deceptive trade
practices.  Colo. Rev. Stat. § 6-1-105.  Under the Colorado Consumer Protection Act, "a person
engages in a deceptive trade practice when, in the course of the person's business, vocation, or
occupation, the person:"

- "Makes false or misleading statements of fact concerning the price of goods,
  services, or property or the reasons for, existence of, or amounts of price
  reductions," Colo. Rev. Stat. § 6-1-105 (l);

- "Advertises goods, services, or property with intent not to sell them as
  advertised," Colo. Rev. Stat. § 6-1-105 (i);

- "Makes a false representation as to the characteristics… of goods," Colo. Rev.
  Stat. § 6-1-105 (e);

- "Fails to disclose material information concerning goods, services, or property
  which information was known at the time of an advertisement or sale if such
  failure to disclose such information was intended to induce the consumer to enter
  into a transaction," Colo. Rev. Stat. § 6-1-105 (u).

59.    Here, as alleged more fully above, Defendant makes false and misleading
statements of fact concerning the price of goods, and the reasons for, existence of, and amounts
of price reductions for those goods.  Defendant does this, for example, by crossing out a higher
price (*e.g.*, $70.31) and displaying it next to a lower price.  Reasonable consumers would

understand this to mean that the crossed out higher price is Defendant's former and usual price

for the product, and that the lower price next to it is a discounted price only available for a

limited time as a result of a time limited sale.  In other words, reasonable consumers would

understand Defendant's statements to represent that the prices in strikethrough font are the

regular and usual prices of the products in question, and their former prices.  And they would

understand Defendant's statements to mean that price reductions exist on the regular and usual

prices, and former prices, of Defendant's products, for a limited time, in an amount equal to the

difference between the prices in strikethrough font, and the lower prices next to them.

60.    In truth, however, the prices advertised by Defendant are not Defendant's usual

and regular prices, or its former prices. Defendant rarely if ever sells its products at those prices,

and instead, consistently offers discounts off those prices.  Accordingly, Defendant's statements

about the prices of its goods are false and misleading.  So are Defendant's statements about the

supposed price reductions that supposedly apply to those goods.

61.    Moreover, Defendant advertises its goods with intent not to sell them as

advertised.  Defendant advertises goods with certain usual prices, regular prices, and market

values (the strikethrough prices) but does not intend to sell goods with those usual prices, regular

prices, or market values, and instead intends to sell goods with lower usual and regular prices

and market values in their place.  For the same reasons, Defendant makes false representations as

to the characteristics of the goods it sells.

62.    Plus, Defendant fails to disclose material information concerning its goods that is

known to Defendant, namely that the goods it is selling do not have the advertised regular and

usual prices and market values, but instead have lower ones.  Defendant also fails to disclose that

its advertised discounts are not true discounts, and are not limited-time, and instead persist

consistently.  And, these omissions were intended to induce its customers to buy rugs, by making

them think they were getting a better deal than the truly were, and rugs worth more than they

really were.

63.    Defendant's deceptive advertising practices have a significant negative public

impact.  Defendant's website, which contains Defendant's false and misleading advertisements,

has an estimated 600,000 monthly pageviews.  The website is accessible in Colorado, and it

reaches and affects hundreds or thousands of consumers in Colorado.

64.    The consumers targeted and affected by Defendant's practices are everyday

purchasers of rugs and other home goods. They lack specialized knowledge or bargaining power

to detect Defendant's deceptive pricing practices, which as discussed in greater detail above,

would require regular monitoring of Defendant's website.

65.    Defendant's deceptive advertisements have previously impacted other consumers.

For example, as explained above, RugsUSA was already sued for using fake sales in other states,

by other consumers that were impacted by the deceptive advertisements. In addition, because

RugsUSA has not corrected its advertising practices, it also has the significant potential to

continue to deceive other consumers in the future.

66.    As a result, Colorado consumers were and continue to be misled into purchasing

RugsUSA Products they otherwise would not have purchased and/or paying artificially inflated

prices for those Products that could not be charged absent the misrepresentations described

above.

67.    Defendant's misrepresentations were a substantial factor and proximate cause in

causing damages and losses to Plaintiff and the Class.

68.    Plaintiff and the Class were injured as a direct and proximate result of

Defendant's conduct because (a) they would not have purchased RugsUSA Products if they had

known the truth, (b) they overpaid for the Products because the RugsUSA Products were sold at

a price premium due to the misrepresentation, and/or (c) they received products with market

values lower than the promised market values, and did not receive the discounts they were

promised.

### Second Cause of Action:

### Breach of Contract

### (By Plaintiff and the Class)

69.    Plaintiff incorporates each and every factual allegation set forth above.

70.    Plaintiff brings this cause of action on behalf of herself and the Class.

71.    Plaintiff and class members entered into contracts with Defendant when they

placed orders to purchase Products on Defendant's website.

72.    The contracts provided that Plaintiff and class members would pay Defendant for

the Products purchased.

73.    The contracts further required that Defendant provides Plaintiff and class

members with Products that have a market value equal to the regular prices displayed on the

website.  They also required that Defendant provide Plaintiff and class members with a discount

equal to the difference between the price paid, and the regular prices advertised.  These were

specific and material terms of the contract.

74.    The specific discounts were a specific and material term of each contract.

75.     Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

76.     Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

77.     Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's principal address in California and registered agent, on February 21, 2025.

78.     As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

### **Third Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiff and the Class)**

79.     Plaintiff incorporates each and every factual allegation set forth above.

80.     Plaintiff brings this cause of action on behalf of herself and members of the Class.

81.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the RugsUSA Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

82.     This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

83.     In fact, the RugsUSA Products' stated market value was not the prevailing market value.  Thus, the warranty was breached.

84.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's principal address in California and registered agent, on February 21, 2025.  The notice letter was delivered on February 24, 2025.

85.     Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased RugsUSA Products if they had known that the warranty was false (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty and/or (c) they received products worth less than warranted.

## Fourth Cause of Action:

## Quasi-Contract/Unjust Enrichment

## (By Plaintiff and the Class)

86.     Plaintiff incorporates each and every factual allegation in paragraphs 1-42, 48-67, above.

87.     Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (Claim II) on behalf of herself and the Class.

88.     As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase RugsUSA Products and to pay a price premium for these Products.

89.     In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

90.     (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are voidable.

91.     Plaintiff and the class seek restitution, and in the alternative, rescission.

**Fifth Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiff and the Class)**

92.     Plaintiff incorporates each and every factual allegation set forth above.

93.     Plaintiff brings this cause of action on behalf of herself and members of the Class.

94.     As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

95.     These representations were false.

96.     When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these misrepresentations were true when made.

97.     Defendant intended that Plaintiff and Class members rely on these misrepresentations and Plaintiff and Class members read and reasonably relied on them.

98.     In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the RugsUSA Products.

99.     Defendant's misrepresentations were a substantial factor and proximate cause in

26

causing damages and losses to Plaintiff and Class members.

100.    Plaintiff and Class members were injured as a direct and proximate result of
Defendant's conduct because (a) they would not have purchased RugsUSA Products if they had
known that the representations were false, and/or (b) they overpaid for the Products because the
Products were sold at a price premium due to the misrepresentation.

## Sixth Cause of Action:

## Intentional Misrepresentation

## (By Plaintiff and the Class)

101.    Plaintiff incorporates each and every factual allegation set forth above.

102.    Plaintiff brings this cause of action on behalf of herself and members of the Class.

103.    As alleged more fully above, Defendant made false representations and material
omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the
discounts and savings advertised.

104.    These representations were false.

105.    When Defendant made these misrepresentations, it knew that they were false at
the time that it made them and/or acted recklessly in making the misrepresentations.

106.    Defendant intended that Plaintiff and Class members rely on these
misrepresentations and Plaintiff and Class members read and reasonably relied on them.

107.    In addition, Class-wide reliance can be inferred because Defendant's
misrepresentations were material, i.e., a reasonable consumer would consider them important in
deciding whether to buy the RugsUSA Products.

108.    Defendant's misrepresentations were a substantial factor and proximate cause in

causing damages and losses to Plaintiff and Class members.

109.    Plaintiff and Class members were injured as a direct and proximate result of

Defendant's conduct because (a) they would not have purchased RugsUSA Products if they had

known that the representations were false, and/or (b) they overpaid for the Products because the

Products were sold at a price premium due to the misrepresentation.

**VII.    Relief.**

110.    Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, treble damages, and punitive damages where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

**VIII.    Demand for Jury Trial.**

111.     Plaintiff demands the right to a jury trial on all claims so triable.

Date: April 18, 2025                    Respectfully submitted,

By:    *s/ Brent Boos*
        Brent Boos (Co. Bar No. 59007)
        brent@kingsiegel.com
        KING & SIEGEL LLP
        4793 Tantra Dr.
        Boulder, CO 80305
        Telephone: (909) 287-4641

        Christin Cho (Cal. Bar No. 238173)
        christin@dovel.com
        Simon Franzini (Cal. Bar No. 287631)
        simon@dovel.com
        DOVEL & LUNER, LLP
        201 Santa Monica Blvd., Suite 600
        Santa Monica, California 90401
        Telephone: (310) 656-7066
        Facsimile: (310) 656-7069

        Neal Deckant
        deckant@bursor.com
        BURSOR & FISHER, P.A.
        1330 Avenue of the Americas, Floor 32
        New York, NY 10019
        Telephone: (646) 837-7150

        *Attorneys for Plaintiff*